# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Criminal Action No. 22-cr-00113-MN |
| | ) |
| MICHAEL MARX, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

Over the course of three years, Michael Marx ("Defendant") trafficked thousands of counterfeit professional sports championship rings imported from China through his eBay account. The Defendant continued his scheme despite repeated written notices from the United States Customs and Border Protection ("CBP") informing him that his packages were seized for violations of federal law. This Court should sentence the Defendant to probation with a condition of 12 months of home confinement. As explained further below, the government's recommended sentence reflects a downward variance from the low-end of the Guidelines, which call for a term of 12 to 18 months, with a minimum of 6 months in prison.[1]

---

[1] As it does in every case, the government will be filing a sealed Attachment A to this Sentencing Memorandum.

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

In April 2021, Homeland Security Investigations ("HSI") received information that the Defendant was importing counterfeit goods from China to his home in Delaware. (D.I. 20 ("PSR") at ¶ 14). Between January and April 2021, CBP seized six shipments from China to the Defendant containing numerous fake championship rings for various professional sports organizations, including the National Football League ("NFL"), Major League Baseball ("MLB"), the National Basketball Association ("NBA"), and the National Hockey League ("NHL"). *Id.* The rings contained counterfeit marks that were identical to or substantially indistinguishable from marks registered by the U.S. Patent and Trademark Office belonging to numerous sports organizations, including the Tampa Bay Buccaneers. *Id.* at ¶¶ 14-15. Between April 2019 and April 2021, the Defendant sold the imported counterfeit rings through online stores that he operated on eBay and other websites. *Id.* at ¶¶ 14-16.

The Defendant received at least three Notice of Seizure and Information to Claimants Forms from CBP informing him that the importation of counterfeit rings is contrary to federal law and that the property was seized by CBP and subject to forfeiture. *Id.* at ¶ 14. In a blatant disregard of those notices, the Defendant continued to import counterfeit rings from China and list them for sale on eBay and other websites for profit. *Id.* at ¶¶ 14-15.

On September 9, 2021, after seizing a shipment of counterfeit Tampa Bay Buccaneers Super Bowl rings bound for the Defendant, law enforcement officers conducted a controlled delivery of the rings at the Defendant's residence. *Id.* at ¶ 16. After the Defendant accepted the package and brought it into his home, law enforcement officers executed a search warrant and seized thousands of counterfeit championship rings and packaging materials from the Defendant's residence. *Id.* Inside the home, law enforcement saw that the Defendant was in the process of listing the newly received rings for sale on eBay. *Id.* The Defendant's computer screen was open to a "Revise your listing" page for his eBay account, where he was advertising that "OFFICAL 2020-2021 TAMPA BAY BUCCANEERS Championship Super Bowl Ring[s]" were "IN-STOCK." *Id.* The retail value of the counterfeit rings seized by law enforcement was at least $40,000. *Id.*

On April 5, 2023, the Defendant pled guilty to one count of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a)(1). The Defendant admitted that he intentionally trafficked in goods and services containing a trademark that he knew was counterfeit. (D.I. 15 at ¶ 3). For purposes of calculating the infringement amount, the parties stipulated that the retail value of the counterfeit rings was at least $40,000, resulting in an increase in 6 offense levels pursuant to §§ 2B5.3(b)(1)(B) and 2B1.1(b)(1)(D) of the United States Sentencing Guidelines ("Guidelines"). *Id.* at ¶ 5(a).

The Court scheduled a Sentencing Hearing to take place on November 29, 2023, at 11:00 AM. (D.I. 24). As set forth in the PSR, the Guidelines call for Defendant to serve 12 to 18 months in prison based on a total offense level of 13. PSR at ¶ 92.[2] Pursuant to § 5C1.1(d) of the Guidelines, if the applicable Guideline range is in Zone C of the Sentencing Table, as it is here, the minimum term may be satisfied by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment. *Id.* ¶ 93. If, however, the applicable Guideline range is in Zone B of the Sentencing Table, then "the minimum term may be satisfied by . . . a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment." Guidelines at § 5C1.1(c)(3).

## II. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Court must consider several statutory factors when sentencing any defendant, including the nature and circumstances of the offense, the defendant's personal history and characteristics, and the need to promote deterrence and respect for the law. *See* 18 U.S.C. § 3553(a). Here, the Defendant's conduct warrants a

---

[2] The maximum term of imprisonment for Trafficking in Counterfeit Goods, in violation of 18 U.S.C. § 2320(a), is 10 years with a term of supervised release of not more than three years.

4

sentence of probation with a condition of 12 months of home confinement. For that reason, the government recommends a downward variance in Mr. Marx's total offense level from 13 to 11, with a new applicable Guideline range of 8 to 14 months. If the Court adopts this variance, Mr. Marx's new total offense level would fall into Zone B of the Sentencing Table. Thus, "the minimum term may be satisfied by . . . a sentence of probation that includes a condition or combination of conditions that substitute . . . home detention for imprisonment." Guidelines at § 5C1.1(c)(3).

### A. The Nature and Circumstances of the Offense

The scope of the Defendant's unlawful scheme weighs in favor of the government's recommended sentence. Over the course of three years, the Defendant profited from the sale of numerous counterfeit championship rings on eBay and other websites. PSR at ¶¶ 14-16. A central policy goal of our anti-trafficking statutes "is to protect trademark holders' ability to use their marks to identify themselves to their customers and to link that identity to their reputations for quality goods and services." *United States* v. *Torkington*, 812 F.2d 1347, 1353 (11th Cir. 1987). Professional sports organizations like the Buccaneers have their trademarks devalued when hundreds of low-quality, knockoff items bearing their marks are sold. "A trademark holder's ability to use its mark to symbolize its reputation is harmed when potential purchasers of its goods see inauthentic goods and identify these

goods with the trademark holder." *Id.* The harms caused by the Defendant's actions are real and substantial and can result in significant devaluation of the trademark.

It is particularly troubling that the Defendant repeatedly disregarded clear notice that his conduct was unlawful. CBP issued at least three written warnings informing the Defendant that his conduct was in violation of federal law. Notwithstanding those warnings, the Defendant chose to flout the law in pursuit of personal gain. These facts counsel in favor of the government's recommended sentence.

### B. The History and Characteristics of the Defendant

Defendant's history and characteristics also support the government's recommended sentence. Michael Marx is a 61-year-old man with no prior criminal history. He suffers from significant back issues and recently underwent back surgery. PSR at ¶ 65. He has been self-employed as a professional dog trainer for many years. Unfortunately, he supplemented his income by exploiting the trademark value of numerous professional sports organizations.

Because the Defendant has no criminal history and is able to earn an income through his dog training business, the recommended sentence is likely sufficient to deter the Defendant from future similar criminal conduct.

## C. Promoting Deterrence and Respect for the Law

There is a heightened need for deterrence in cases involving intellectual property crimes. Like many intellectual property offenders, the Defendant's actions demonstrate that he simply believed his conduct would go unpunished. He continued his criminal scheme despite clear, repeated warnings from CBP that his conduct was a federal crime. Because many intellectual property offenders believe they can their commit crimes with impunity, the Defendant's sentence should appropriately account for the need for general deterrence.

Moreover, the government's recommended sentence is necessary to promote respect for the law. Intellectual property law plays a fundamental role in the United States economy, and is a driving force of progress in entertainment, technology, art, and culture. *See* United States Patent and Trademark Office, Intellectual Property and the U.S. Economy: 2019 Update, available at https://www.uspto.gov/sites/default/files/documents/uspto-ip-us-economy-third-edition.pdf (2019) (Intellectual Property-intensive industries account for 47 million jobs and $7.8 trillion of America's GDP). Protecting intellectual property from infringement is essential to foster innovation and creativity in the United States. The proliferation of counterfeit goods, such as the rings sold by the Defendant, deceives unwitting consumers, and erodes the public's trust and image of established trademarks.

### III. CONCLUSION

Based on the foregoing, the government respectfully recommends that the Court sentence the Defendant to probation with a condition of 12 months of home confinement, as well as forfeiture as outlined in the plea agreement and preliminary order of forfeiture. (D.I. 15; D.I. 22).[3]

                                            Respectfully submitted,

                                            DAVID C. WEISS
                                            United States Attorney

                             By:   */s/ William E. LaRosa*
                                            William E. LaRosa
                                            Assistant United States Attorney
                                            United States Attorney's Office
                                            1313 N. Market Street
                                            Wilmington, DE 19899-2046
                                            (302) 573-6205
                                            William.LaRosa@usdoj.gov

Dated: November 15, 2023

---

[3] The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. The Buccaneers Limited Partnership Tampa Bay Broadcasting Inc. is a victim of the Defendant's crime because the Defendant unlawfully imported counterfeit championship rings bearing their trademark. PSR at ¶¶ 17-18. A victim notification letter was sent to the Buccaneers, but no response was ever received. *Id.* Moreover, based on his financial condition, Mr. Marx is likely unable to pay a fine within the Guideline range. *Id.* at ¶ 90. Accordingly, the government recommends that no restitution or fine be ordered in this case.