IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 22-cr-00113-MN |
| ) | |
| MICHAEL MARX, ) | |
| ) | |
| Defendant. ) | |

### DEFENSE'S SENTENCING MEMORANDUM

On April 5, 2023, the defendant entered a plea of guilty before The Honorable Maryellen Noreika to a single count of Trafficking in Counterfeit Goods in violation of 18 U.S.C. § 2320(a)(1). Such a plea acknowledged that the defendant intentionally trafficked in goods and services containing a trademark that he knew was counterfeit. The defendant stipulated to the infringement amount, which resulted in an increase of six offense levels to his base level, pursuant to §§ 2B5.3(b)(1)(B) and 2B1.1(b)(1)(D) of the United States Sentencing Guidelines.

Thereafter, a presentence investigation was completed and sentencing in this matter was originally scheduled for August 29, 2023. However, on July 20, 2023, the defendant underwent a lengthy and complex surgery on his lower back, which basically made him physically incapable of appearing for the sentencing on August 29. The matter was therefore rescheduled to November 29, 2023 at 11:00

a.m., with the understanding that the defense could make further application for a continuance, depending on the defendant's physical condition.

As will be explained in more detail herein, the surgery that was conducted did not alleviate the conditions causing the defendant's pain and physical instability and he, unfortunately, is no better off now than he was prior to the surgery taking place. Since he is not really going to get any better at this point, counsel is making no additional application for a continuance of the sentencing.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The defendant has had an opportunity to review the government's Sentencing Memorandum and does not disagree with the factual background or procedural history set forth therein. The defendant also did not, and does not, disagree with the calculations set forth in the Presentence Report and reflected in the government's memorandum as to the applicable sentencing guideline.

Last, the defendant does not disagree with the government's sentencing recommendations, as reflected on pages 4 and 5 of their Sentencing Memorandum.

## II.   SENTENCING FACTORS TO BE CONSIDERED

The issue in this case is whether, under 18 U.S. Code § 3553, given the current characteristics of this defendant, a period of incarceration would be "greater than necessary to comply with the purposes set forth in ¶ 2 of this subsection."

In reviewing 18 U.S. Code § 2320, the defense does not disagree that this is a serious offense and that some level of punishment should be imposed. Although it also appears that perhaps the concept of general deterrents might be advanced by a more severe sentence, this factor does not seem to be firmly an issue here. Given the contents of the Presentence Report, the Court has learned that there does not appear that there is any need to protect the public from further crimes committed by this defendant and given the defendant's background and training, there does not appear to be any need to provide the defendant with remedial services in that respect.

The defendant seeks a variance from the otherwise applicable sentencing guideline based primarily on the defendant's severe health issues, which not only prevent him from living a productive life here but which would absolutely literally paralyze him if he were to be incarcerated. The defense, consistent with the position of the government, is requesting a two-level variance to allow this Court to impose a sentence including home confinement, which would permit the defendant to live his life outside of a prison cell and to secure as much relief as is possible to him from the constant and disabling pain under which he lives on a daily basis.

Attached hereto are reports from Delaware Neurosurgical Group, P.A. dated February 1, 2023 and April 6, 2023. These reports detail the physical conditions

3

under which Mr. Marx has been operating and which were not relieved by the July 20 surgery.

Mr. Marx suffers from chronic pain in his lower back. The limitations that this pain imposes are as follows:

1. He can only stand for a couple of minutes at a time in one place;

2. He is able to walk with a cane for a period of about 15 minutes, after which the pain becomes unbearable;

3. He must sit in a leather office chair with lumbar support, as it is the only type of chair in which he can sit comfortably for an extended period of time;

4. He currently undergoes aqua therapy, since land-based therapy is too painful; and

5. He is, of course, in constant pain.

Given the level of the defendant's dysfunction, he does require assistance in performing the daily necessities of his life and he reports subjectively, something which is corroborated by the objective reports provided, that his pain level on a daily basis is a "12" on a scale of "10".

As to the underlying offense, the defendant did not make any efforts to represent to his potential buyers that the Super Bowl rings that he was peddling were anything other than replicas and he at no time attempted to sell them off as the "real thing". However, under the law, as counsel has learned, it is sufficient for

conviction purposes that someone in the chain of purchase could have been significantly misled as to believe that the rings were, in fact, originals, so that the defendant could very well be found guilty to the offense.

It is suggested then that the sentencing guidelines somewhat over-represent the seriousness of the offense, especially given the defendant's unique characteristics. However, that issue need not really be addressed under the circumstances of this case given the government's position and the mutual request that a downward variance be considered by the Court.

A period of incarceration under these circumstances would be "greater than necessary to comply with the purposes set forth" in the applicable statute. It is argued to the Court that imposing a period of incarceration as suggested by the guidelines would be inconsistent with the admonitions found in 18 U.S.C. § 3553 and unnecessary to accomplish any of the remedial purposes set forth in that statute.

The defense would therefore join in the government's recommendation that this Court grant a variance from the sentencing guidelines and impose a period of 12 months of home confinement as the appropriate sentence under the facts of this case.

                    Respectfully submitted

                    _____
                    EUGENE J. MAURER, JR. (#821)
                    1201-A King Street
                    Wilmington, DE  19801
                    (302) 652-7900
                    Attorney for Defendant

Dated: November 21, 2023

# DELAWARE NEUROSURGICAL GROUP, P.A.
774 CHRISTIANA ROAD
SUITE 202
NEWARK, DE 19713
• PHONE: (302) 366-7671  • FAX: (302) 366-7549

| | |
|---|---|
| Leif-Erik Bohman, M.D. | Justin Fleegle, PA-C |
| P. Tim Boulos, M.D. | Natalie Hoffman, PA-C |
| Matthew J. Eppley, M.D. | Teresa Kitko, PA-C |
| Tony Maidoh, M.D. | Timothy Maring, PA-C |
| Pawan Rastogi, M.D. | Bernard Racey, PA-C |
| Pulak Ray, M.D. | Joseph Reynolds, PA-C |
| Michael G. Sugarman, M.D. | Shakara Smith, PA-C |
| Kennedy Yalamanchili, M.D. | Morgan Snyder, PA-C |
| | Heather Stauff, PA-C |

Date of Service: 02/01/2023

Re: Michael Marx
DOB: 09/05/1962
Acct #: 140934

**Reason For Visit**
Visit for: right low back pain with radiation down right leg which is a 10+/10 at worst and a 5/10 at rest. Pain does interfere with ADL. He is taking NSAIDS, received PT from January 2022 to February 2022 as well as 2 injections with Dr. Sutherland. This visit is not only for a second opinion.

**History of Present Illness**
Michael Marx is a 60 year old male.
• Medication list reviewed.

Michael Marx is a 60-year-old Caucasian male with a long-standing history of back problems, though he does admit over the last 2 years, his symptoms have become unbearable. The patient reports he has undergone recent conservative treatment for his back, including treatment with nonsteroidals, physical therapy, and 2 lumbar steroid injections administered by Dr. Sutherland. Despite these treatments, he denies any relief. The physical therapy actually worsened his pain. He currently rates his pain level at a 12 on a scale of 1-10. He describes right-sided back and buttock pain with radiating pain to the right leg involving the posterior aspect of the thigh, posterior aspect of the calf, to the foot. He denies involvement of his toes. He denies left lower extremity symptoms or changes in bowel or bladder habits. He did complete an MRI study of his lower back in March, demonstrating evidence of an L4-5 disc herniation. He did complete a more recent MRI study 2 months ago, demonstrating the disc herniation appeared to be better, however, there was evidence of possible spondylolysis and spondylolisthesis at the L4-5 level. The patient was referred by his pain management physician for operative treatment. He does admit, despite conservative management, his symptoms have only worsened.

**Current Medication**
• Meloxicam 15 MG Oral Tablet  60 days, 0 refills
• NSAIDS Oral Capsule  0 days, 0 refills

**Past Medical/Surgical History**
Gallbladder surgery.

**Social History**
Tobacco use: Smoking status: Current everyday smoker.
Alcohol: Alcohol use.
Drug Use: Not using drugs.
Marital: Single.

Date of Service: 02/01/2023 Re: Michael Marx DOB: 09/05/1962 Acct #: 140934

MUSCULOSKELETAL: Manual motor strength testing of the upper and lower extremities was performed. The iliopsoas muscle, quadriceps muscle, anterior tibialis, extensor hallucis longus, and gastrocnemius/soleus complex in the lower extremity were tested. There is no evidence of weakness involving these motor groups. There is no evidence of atrophy or wasting. No fasciculations or spasticity was identified. There are no abnormal movements detected.

SENSORY: Sensory testing was performed for both posterior columns and spinothalamic tracts. Dermatomes were tested to both light touch and pin prick, as well as proprioceptive testing of the limbs. There is no evidence of deficit to these sensory modalities.

*REFLEXES: The deep tendon reflexes are depressed but symmetric at the patellar, hamstrings, and Achilles sites. Hoffman's and Babinski were absent bilaterally. There is no evidence of myoclonus or spasticity in the upper or lower extremities. No pathologic reflex is detected.

GAIT AND STATION: The gait is without specific abnormality. There is no truncal or limb ataxia. Strength for toe and heel walking is intact. Coordination is intact.

Tests
MRI study of the lumbar spine from November was reviewed. Prior films from March were not available. By report, the film in March does demonstrate evidence of a right-sided L4-5 disc herniation, which appears to be substantial. This is not noted in the current report. There is evidence of mild to moderate multilevel disc disease, most substantial at the L4-5 level, where there is evidence of a grade 1 spondylolisthesis and facet disease. There is evidence of moderate foraminal narrowing.

Assessment
Michael Marx is a 60-year-old Caucasian male with disabling right sided back and lower extremity pain associated with disc disease most prominent at the L4-5 level. His imaging studies do suggest the possibility that the disc herniation may have improved, however, his symptoms have only worsened. He does have an element of stenosis and spondylolisthesis at L4-5, which may still be contributing, however, it is possible the disc herniation which has resolved, has caused chronic nerve damage, that may not respond to any form of treatment, including surgery. I did explain this to the patient today. Nevertheless, given his severe pain and disability, I did discuss with him the possibility of additional testing and surgical treatment involving a spinal fusion at the L4-5 segment, with the understanding this surgery may or may not prove effective. Given his severe symptoms, the patient does wish to proceed with the additional testing and surgical treatment. I did request plain x-ray films of the lumbar spine with flexion-extension views, to better evaluate stability of the L4-5 segment. I did also request a CT study of the lumbar spine, to better assess bony anatomy. This may better detect the possibility of a spondylolysis or any significant degenerative changes at L5-S1, which may be contributing.

I discussed with the patient surgical treatment would consist of an L4-5 decompression, including laminotomies, foraminotomies, discectomy, and fusion with use of iliac crest, allograft, interbody cage, and pedicle screw fixation. I did discuss this type of surgery is extensive, with moderate rates of success. The surgery generally requires a 1-2 day hospital stay, back bracing for approximately 1 month, followed by a program of physical therapy. Full recovery would be anticipated to be 3-6 months, up to a year for full improvement. Long-term limitations would be recommended, including avoiding heavy physical demand, which may wear on additional disks, in the future. Surgical treatment of this nature generally carries a success rate between 60 and 70%. Still, this leaves 1 in 3 without improvement or potentially worse. I did discuss risks associated with surgery. Risks that were discussed include but not limited to infection, bleeding, weakness or paralysis, death, failure to improve, subsequent surgeries, worsening of symptoms, medical complication (including DVT, pulmonary embolus myocardial infarction, stroke, etc.), recurrent disc disease seen at the sites, reoperation, failure of bone graft/instrumentation, chest lung or abdominal injury, vascular injury, adjacent level disc degeneration, loss of range of motion, spinal fluid leakage, revision surgery, chest/lung/abdominal injury, vascular injury, etc.. Surgery of this magnitude is generally considered as a last resort for symptoms that remain disabling. All questions were answered to the patient's satisfaction.

Date of Service: 02/01/2023 Re: Michael Marx DOB: 09/05/1962 Acct #: 140934

The patient does wish to proceed with surgical treatment. I have arranged the testing and a follow-up visit, to review the results. Thank you for allowing us to share in his care.

**Plan**

- **Other**
  Follow-up Appt Req
  with SS after x-rays/CT lumbar complete

- **Spondylolisthesis, lumbar region**
  Visit Summary: Visit Summary Provided to the Patient
  X-Ray/Spine: Lumbar - AP/LAT, Lumbar - FLEX/EXT
  CT/CT without Contrast: Lumbar Spine w/ 2D recon

**Care Team**
Dale Sutherland, MD

**Health Reminders**
- Assess BMI satisfied 02/01/2023.
- Assess Tobacco Use satisfied 02/01/2023. Result is abnormal.

**Preventative Assessments/Counseling/Education**
   Medication reconciliation performed Patient's current medication list was reviewed.
   Tobacco use screening with tobacco cessation intervention, history of tobacco use reported history of tobacco use reported, and care plan documented for pain for pain ten Pain is 10 on a scale of 1 to 10. A planned follow up appointment or a referral and notification to the other care providers have been made for the patient's pain; BMI is documented as above normal parameters and follow up plan is documented. BMI is above normal parameters. Patient education on healthy eating and regular physical activity was provided, patient screening for alcohol consumption Less than 2 Single question screening for unhealthy alcohol use:, and Patient not identified as an unhealthy alcohol user.
   Intervention and counseling on cessation of tobacco use Brief counseling on smoking and associated risks were discussed. Behavioral counseling on smoking cessation was provided to the patient. This included helping the patient to recognize situations that increase their risk for smoking and coping skills to overcome barriers to quitting. Offered the patient more intensive smoking cessation counseling/referrals.

**Kennedy Yalamanchili MD**
**Electronically signed by: Kennedy Yalamanchili    Date: 02/01/2023 13:08**

# DELAWARE NEUROSURGICAL GROUP, P.A.

774 CHRISTIANA ROAD
SUITE 202
NEWARK, DE 19713
•PHONE: (302) 366-7671    •FAX: (302) 366-7549

Leif-Erik Bohman, M.D.
P. Tim Boulos, M.D.
Matthew J. Eppley, M.D.
Pawan Rastogi, M.D.
Pulak Ray, M.D.
Michael G. Sugarman, M.D.
Kennedy Yalamanchili, M.D.

Mary Kate Green, PA-C
Teresa Kitko, PA-C
Robert Kondos, PA-C
Britney Martin, PA-C
Bernie Racey, PA-C
Joseph Reynolds, PA-C
Shakara Smith, PA-C
Scott Winfield, PA-C

**Date of Appointment:** 04/06/2023

**Re:** Michael Marx
**DOB:** 09/05/1962
**Acct#:** 140934

### Reason For Visit
Visit for: Lumbar Follow Up and visit for: right low back pain with radiation down right leg which is a 10+/10 at worst and a 5/10 at rest. Pain does interfere with ADL. He is taking NSAIDS, received PT from January 2022 to February 2022 as well as 2 injections with Dr. Sutherland. This visit is not only for a second opinion.

### History of Present Illness/Subjective
Michael Marx is a 60-year-old Caucasian male who presents to the outpatient neurosurgical office to review additional testing and discuss surgical treatment. He reports no significant change in symptoms since his last visit.

He has a long-standing history of back problems, though he does admit over the last 2 years, his symptoms have become unbearable. The patient reports he has undergone recent conservative treatment for his back, including treatment with nonsteroidals, physical therapy, and 2 lumbar steroid injections administered by Dr. Sutherland. Despite these treatments, he denies any relief. The physical therapy actually worsened his pain. He currently rates his pain level at a 12 on a scale of 1-10. He describes right-sided back and buttock pain with radiating pain to the right leg involving the posterior aspect of the thigh, posterior aspect of the calf, to the foot. He denies involvement of his toes. He denies left lower extremity symptoms or changes in bowel or bladder habits.

### Review of Systems
Pertinent positive findings in HPI. Remaining 14 point review of systems are negative.

**Encounter Background Information:** Abdominal pain was unremarkable.
**Systemic:** Not feeling tired. No fever and no recent weight loss. Recent weight gain. No night sweats.
**Head:** Headache severity not severe. No sinus pain and no sinus pressure.
**Eyes:** No worsening vision and no blurred vision.
**Otolaryngeal:** No hearing loss and no tinnitus.
**Cardiovascular:** No chest pain or discomfort and no palpitations.

Patient: Michael Marx  DOB: 09/05/1962  Enc: 04/06/2023

**Pulmonary:** No shortness of breath. Orthopnea was one. No cough, no hemoptysis, and no wheezing.
**Gastrointestinal:** No dysphagia, no nausea, no vomiting, and no hematochezia. No diarrhea. No rectal pain.
**Genitourinary:** No change in urinary frequency - excessive and no urinary hesitancy. No urinary loss of control. Enuresis 1 times per night. No dysuria.
**Endocrine:** No polydipsia, no heat intolerance, and not to cold.
**Hematologic:** No tendency for easy bruising.
**Musculoskeletal:** No hand joint swelling, no ankle joint swelling, and no localized soft tissue swelling in the foot. Pain localized to one or more joints.
**Neurological:** No dizziness, no fainting, no tingling, and no numbness.
**Psychological:** No hallucinations and not smelling peculiar odors others cannot smell.
**Skin:** No dry skin and no rash. No brittle nails.

**Medications**
Medications Reconciled

**Allergies**
- No Known Allergies

**Patient History**
The patient reports no recent change in medical history.

**Physical Findings**
**Neurological:**
  *Motor:* Preference for right-handedness.

PHYSICAL EXAMINATION: (*Indicates an abnormality)

CONSTITUTIONAL: The patient is about the stated age and weight, appropriate for build and height, in no apparent distress.

NEUROLOGICAL: The patient is oriented to time, place, and person. Recent and remote memory are intact. Attention span and concentration are within normal limits. Language is fluent with no evidence of dysphasia. Fund of knowledge appears to be age and education appropriate.

*SPINE: There is no evidence of significant scoliosis, exaggerated kyphosis, lordosis, or deformity. There is right lower lumbar spinal tenderness. There is no paraspinal muscle spasm. There are no visible cutaneous stigmata.

*MECHANICAL: Straight leg raising (Lesague's) is positive on the right. Patrick's maneuver and hip thrust are negative bilaterally. Leg flexion and rotation is within normal limits.

MUSCULOSKELETAL: Manual motor strength testing of the upper and lower extremities was performed. The iliopsoas muscle, quadriceps muscle, anterior tibialis, extensor hallucis longus, and gastrocnemius/soleus complex in the lower extremity were tested. There is no evidence of weakness involving these motor groups. There is no evidence of atrophy or wasting. No fasciculations or spasticity was identified. There are no abnormal movements detected.

Patient: Michael Marx   DOB: 09/05/1962   Enc: 04/06/2023

SENSORY: Sensory testing was performed for both posterior columsn and spinothalamic tracts. Dermatomes were tested to both light touch and pin prick, as well as proprioceptive testing of the limbs. There is no evidence of deficit to these sensory modalities.

*REFLEXES: The deep tendon reflexes are depressed but symmetric at the patellar, hamstrings, and Achilles sites. Hoffman's and Babinski were absent bilaterally. There is no evidence of myoclonus or spasticity in the upper or lower extremities. No pathologic reflex is detected.

GAIT AND STATION: The gait is without specific abnormality. There is no truncal or limb ataxia. Strength for toe and heel walking is intact. Coordination is intact.

New Studies
Imaging:
*CT Scan Of The Lumbar Spine:*
Reviewed CT scan of lumbar spine demonstrates multilevel degenerative changes most significant at the L4-5 level where there is severe bilateral foraminal narrowing and moderate to severe central canal stenosis.

Prior Studies
MRI study of the lumbar spine from November was reviewed. Prior films from March were not available. By report, the film in March does demonstrate evidence of a right-sided L4-5 disc herniation, which appears to be substantial. This is not noted in the current report. There is evidence of mild to moderate multilevel disc disease, most substantial at the L4-5 level, where there is evidence of a grade 1 spondylolisthesis and facet disease. There is evidence of moderate foraminal narrowing.

Assessment/Plan
Michael Marx is a 60-year-old Caucasian male with disabling right sided back and lower extremity pain associated with disc disease most prominent at the L4-5 level. His imaging studies do suggest the possibility that the disc herniation may have improved, however, his symptoms have only worsened. He does have an element of stenosis and spondylolisthesis at L4-5, which may still be contributing, however, it is possible the disc herniation which has resolved, has caused chronic nerve damage, that may not respond to any form of treatment, including surgery. I did explain this to the patient today. Nevertheless, given his severe pain and disability, I did discuss with him the possibility of surgical treatment.

I discussed with the patient surgical treatment would consist of an L4-5, possible L5-S1 decompression, including laminotomies, foraminotomies, discectomy, and fusion with use of iliac crest, allograft, interbody cage, and pedicle screw fixation. I did discuss this type of surgery is extensive, with moderate rates of success. The surgery generally requires a 1-2 day hospital stay, back bracing for approximately 1 month, followed by a program of physical therapy. Full recovery would be anticipated to be 3-6 months, up to a year for full improvement. Long-term limitations would be recommended, including avoiding heavy physical demand, which may wear on additional disks, in the future. Surgical treatment of this nature generally carries a success rate between 60 and 70%. Still, this leaves 1 in 3 without improvement or potentially worse. I did discuss risks associated with surgery. Risks that were discussed include but not limited to

Patient: Michael Marx    DOB: 09/05/1962    Enc: 04/06/2023

infection, bleeding, weakness or paralysis, death, failure to improve, subsequent surgeries, worsening of symptoms, medical complication (including DVT, pulmonary embolus myocardial infarction, stroke, etc.), recurrent disc disease seen at the sites, reoperation, failure of bone graft/instrumentation, chest lung or abdominal injury, vascular injury, adjacent level disc degeneration, loss of range of motion, spinal fluid leakage, revision surgery, chest/lung/abdominal injury, vascular injury, etc.. Surgery of this magnitude is generally considered as a last resort for symptoms that remain disabling. All questions were answered to the patient's satisfaction.

Patient was prescribed a lumbosacral orthosis for the indicated diagnosis above. This orthosis is required to reduce pain by restricting mobility of the trunk and to otherwise support weak spinal muscles and /or deformed spine. Verbal and written instructions for the use and application of this item will be given at the time the brace is provided. Patient will be instructed that should the brace result in increased pain, decreased sensation, increased swelling, or overall worsening of their medical condition, to please contact our office immediately. Orthotic management and training will be provided for skin care, modifications due to healing tissues, edema changes, interruption in skin integrity, and safety precaution with the orthosis. All questions were answered for the patient. He is satisfied with the plan of care.

Dr. Yalamanchili was actively involved in the patient's clinical decision making. The patient's medical history, physical examination, imaging/test results were reviewed and discussed at length. The patient's diagnosis was confirmed and treatment plan was mutually formulated. He is in full agreement with the treatment plan.

**Orders**
L4-5, possible L5-S1 laminotomies, foraminotomies, decompression, discectomy, and fusion with allograft, iliac crest autograft, interbody cage, pedicle screw instrumentation, and surgical monitoring

**Additional Information/Preventative Assessments/Counseling/Education**
  Medication reconciliation performed Patient's current medication list was reviewed.
  Tobacco use screening with tobacco cessation intervention, history of tobacco use reported history of tobacco use reported, and care plan documented for pain for pain ten Pain is 10 on a scale of 1 to 10. A planned follow up appointment or a referral and notification to the other care providers have been made for the patient's pain; BMI is documented as above normal parameters and follow up plan is documented. BMI is above normal parameters. Patient education on healthy eating and regular physical activity was provided, patient screening for alcohol consumption Less than 2 Single question screening for unhealthy alcohol use:, and Patient not identified as an unhealthy alcohol user.
  Intervention and counseling on cessation of tobacco use Brief counseling on smoking and associated risks were discussed. Behavioral counseling on smoking cessation was provided to the patient. This included helping the patient to recognize situations that increase their risk for smoking and coping skills to overcome barriers to quitting. Offered the patient more intensive smoking cessation counseling/referrals.

Thank you for allowing me to share in the care of this pleasant individual. As always, with warmest personal regards.

Patient: Michael Marx  DOB: 09/05/1962  Enc: 04/06/2023

Shakara S. Smith, PA-C
Kennedy Yalamanchili, MD, FACS

CC:
Dale Sutherland, MD



Shakara S. Smith PA-C
Electronically signed by: Shakara Smith